IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAWN L. WILLIAMS ) | |
| ) | |
| Plaintiff, ) | Case Number: 1:17-cv-204 |
| ) | |
| v. ) | |
| ) | UNITED STATES MAGISTRATE JUDGE |
| ) | RICHARD A. LANZILLO |
| SUPERINTENDENT ) | |
| MICHAEL R. CLARK, et al. ) | |
| ) | |
| Defendant ) | MEMORANDUM OPINION |
| ) | |

Presently before the Court is Defendants' Motion to Sever [ECF No. 53]. Plaintiff Shawn L. Williams (Williams) has filed a Response in opposition [ECF No. 57]. Upon consideration, and for the reasons that follow, the Defendants' motion is **GRANTED**.[1] Williams' Motion for Clarification [ECF No. 62] is **DENIED as MOOT**.

I.  Relevant Background

Williams is a pro se prisoner currently housed at the State Correctional Institution at Albion (SCI-Albion). He initiated this action on July 31, 2017 with a motion for leave to proceed in forma pauperis, which the Court granted. ECF No. 1, ECF No. 3. His Complaint was docketed on August 16, 2017. His lawsuit, brought under 42 U.S.C. § 1983, is based on alleged incidents of sexual harassment and retaliation by prison officials and health care providers. ECF No. 3. Originally, he named twenty-one individuals as Defendants. He also filed a motion requesting to add Valerie Kusiak as a Defendant. ECF No. 20. The Defendants filed their first motion to sever on September 29, 2017. ECF No. 27. The Court granted Williams' motion to

---

[1] All parties have consented to the jurisdiction of a United States Magistrate Judge. *See* 28 U.S.C. § 636, et. seq. (ECF Nos. 2 and 31).

1

add the new defendant and dismissed the Defendants' motion to sever, without prejudice to it being refiled to include a response to the newly added Defendant. ECF No. 42. Later, Williams moved to dismiss the medical defendants from the case. ECF No. 45. The Court granted this motion and dismissed Defendants Stroup, Secara, Chuzie, Edwards, Linder-Gunther, and Smock. ECF No. 46. Defendants then filed the instant motion to sever arguing that the Complaint asserts "multiple separate and distinct issues and claims." ECF No 53 at 2. The Defendants contend there are separate and distinct claims brought against several different Defendants and seek to split this case into separate actions against different Defendants. ECF No. 53, at 2-3.

Williams asserts claims against Defendant Beddick that allegedly occurred between May and December of 2015; claims for supervisory liability against various Defendants for Beddick's actions; a claim against Defendant Kusiak faulting her investigation of his claims against Beddick; a retaliation claim against Defendant Hammett for incidents which allegedly took place between July and August of 2016; a retaliation and harassment claim against Defendant Harmon stemming for an incident that took place between September and November of 2016; an excessive force claim against this same Defendant for an incident on December 7, 2016; and claims against Defendants Knight and Villegas for denial of medical and psychological assistance on January 12, 2017, which allegedly caused Williams to attempt suicide. Williams responded in opposition to the motion to sever. ECF No. 57. This motion is now ready for disposition.

II. Motion to Sever

At the outset, the Court notes that Defendants' motion implicates two distinct rules of civil procedure. First, the Defendants seek severance of parties: Defendants Hammett, Harmon,

2

Knight, Villegas, and Kusiak. ECF No. 53 at 10. This request implicates Fed. R. Civ. P. 20, which provides that:

> Persons ... may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 20's purpose is "to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple law suits." *Russell v. Chesapeake Appalachia, L.L.C.*, 305 F.R.D. 78, 81 (M.D. Pa. 2015). "Courts have broad discretion in applying Rule 20 to reduce inconvenience, delay, and added expense to the parties and to the court, and to promote judicial economy. [But t]he policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit." *Lester v. Rosato*, 2014 WL 3421072, at *2 (M.D. Pa. July 11, 2014). In cases brought by pro se prisoners, Rule 20 "takes on additional importance in light of the Prison Litigation Reform Act of 1995 ("PLRA")," because "a prisoner-plaintiff who is permitted to combine separate, independent claims into one complaint is able to circumvent the PLRA's filing fee requirements and [its] potential 'three strikes' limitation." *Saltalamacchia v. Wentzel*, 2017 WL 2843302, *3 (M.D. Pa. June 9, 2017), *report and recommendation adopted*, 2017 WL 2834507 (M.D. Pa. June 30, 2017). *See also Hagan v. Wetzel*, 2017 WL 2215278, at *2 (M.D. Pa. May 19, 2017).

Second, the Defendants also request that the Court sever various claims. ECF No. 53, at 10 ("Defendants thus ask the Court to sever the claims . . . ."). Severance of claims is governed by Fed. R. Civ. P. 18 which provides that "[a] party asserting a claim . . . may join, as

3

independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). This Rule permits the inclusion of a multitude of "legal, equitable or even maritime claims" in one complaint. *American Lumber Corp. v. Nat'l R.R. Passenger Corp.*, 886 F.2d 50, 54 (3d Cir. 1997). When reviewing the application of either rule courts must recognize that "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966); *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009). But, this impulse is by no means "a license to join unrelated claims and defendants in a single lawsuit." *Pruden v. SCI Camp Hill*, 252 Fed. Appx. 436, 437 (3d Cir. 2007).

In cases like this one, where both rules are applicable, "the analysis under Rule 20 precedes that under Rule 18." *Washington v. Barnhart*, 2018 WL 3581761 at *6 (W.D. Pa. July 27, 2018) (quoting *Miles v. Mich. Dep't of Corr.*, 2018 WL 23369626 (W.D. Mich. May 23, 2018)). The principal inquiry then is whether Williams has asserted a claim for relief against each of the remaining Defendants that arises out of the same transaction, occurrence, or series of transactions or occurrences, and presents a question of law or fact common to all of the remaining Defendants. *Id.* at 6. In *Gibson v. Flemming*, the Court explained,

> The first element of Rule 20(a), the 'same transaction' or transactional relatedness prong, refers to the similarity in the factual background of the relevant claims. Courts generally apply a case-by-case approach when considering whether the facts of several claims constitute a single transaction or occurrence, or a series of transactions or occurrences. "In determining whether a logical relationship exists between claims, the Third Circuit has stated that courts must engage in 'a detailed analysis ... to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties.'"

4

2017 WL 6039754, at *2 (W.D. Pa. Dec. 6, 2017) (quoting *Russell v. Chesapeake Appalachia, L.L.C.*, 305 F.R.D. 78, 81 (M.D. Pa. 2015)) (alteration in original) (quoting *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978)). "Significantly, '[t]ransaction is a word of flexible meaning, which may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection, as upon their logical relationship'." *Cooper v. Fitzgerald*, 266 F.R.D. 86, 88 (E.D. Pa. 2010) (alteration in original) (quoting *Al Daraji v. Monica*, Civ. No. 07-1749, 2007 WL 2994608, at *8 (E.D. Pa. Oct. 21, 2007)). "In assessing whether the requirements of Rule 20 are met, courts must accept the factual allegations in a plaintiff's complaint as true." *Gibson v. Rosati*, Civ. 2014 WL 3809162, at *10 (N.D.N.Y. June 28, 2014).

Williams' initial allegations are against Defendant Beddick and those allegations are first in time. His claims against Beddick span the time period between May and December, 2015. ECF No. 4, ¶¶ 21-42, ¶¶ 114-118. Williams alleges that Defendant Beddick retaliated against him by filing false misconduct reports, conducting excessive searches, and denying Williams access to the law library. *Id.* at ¶¶ 29, 31, 32, 33. During this time period, Williams also claims Beddick verbally harassed him, triggering a prison PREA investigation.[2] Lastly, Williams asserts a claim for "negligent infliction of emotional distress" against Defendant Beddick for an incident which occurred on December 12, 2015. All of these claims spring from a grievance Williams filed against Defendant Beddick in May of 2015, alleging that Beddick refused to let him shower after working and used "inappropriate, obscene, and abuse language" toward Williams. According to the Complaint, Beddick retaliated by verbally harassing Williams,

---

[2] Under the Prison Rape Elimination Act (PREA), 42 U.S.C. § 30301, *et seq*, any allegations of a sexual nature (abuse / harassment) against a staff member or inmate-on-inmate sexual contact are exclusively processed pursuant to Department Policy DC-ADM 008, "Sexual Harassment of or Sexual Contact with Inmates." DC-ADM 008, PREA Policy Procedures Manual; *see also Moore v. Lamas*, 2017 WL 4180378, at *40 n.4 (M.D. Pa. Sept. 21, 2017).

5

whistling at him, refusing to feed him, and by denying Williams access to the prisoner exercise yard. *Id.* at ¶ 24. He further alleges that Defendant Beddick abused him by securing handcuffs too tightly, causing Williams pain and bruising. *Id.* at ¶¶ 114-117.

Williams also has sued various supervisory defendants whom he alleges are liable for Defendant Beddick's actions during this time period. The claims against this group of Defendants arise out of the same series of transactions or occurrences applicable to Defendant Beddick and present a question of law or fact common to all of the Defendants. The Complaint identifies Defendants Giroux, Clark, Franz, Meure, Irwin, Jones, Anderson, Bashor, and Szelewski, faulting them for not "abating" Defendant Beddick's actions. *Id.* at ¶¶ 43-48. These Supervisory Defendants, therefore, are connected to the alleged actions of Defendant Beddick. Most recently, Williams added Defendant Kusiak to his lawsuit, claiming she failed to properly investigate his PREA claims against Beddick. *See* ECF No. 20; ECF No. 42. This allegation transactionally connects to the alleged actions of Defendant Beddick through the PREA complaint Williams filed against him. Importantly, these Defendants do not dispute the connection and do not move to sever these Defendants and claims. *See* ECF No. 53, at 10.

The factual background underpinning Williams' claims against the remaining Defendants, however, lacks any similarity to the claims against Defendant Beddick and the Supervisory Defendants. *See Gibson, supra.* He has sued Defendant Hammett for filing what Williams alleges is a false misconduct charge against him in July of 2016. The factual background underlying this claim is wholly unrelated to the facts giving rise to his claim against Defendant Beddick. The Complaint states that Hammett gave Williams a misconduct on July 14, 2016 for "engaging in or encouraging unauthorized group activity." ECF No. 4, at ¶ 43. This

6

concerned an issue related to Williams and other prisoners protesting not being able to get water and is unrelated in time or substance to his claims against Defendant Beddick. *Id.*

Williams has also sued Defendant Harmon for harassment. Here, he claims Harmon's instruction that Williams report first for breakfast and afterwards for his medication was done in an overly aggressive manner. *Id.* at ¶ 50. Missing is any transactional relationship to Defendant Beddick's actions. Therefore, these two defendants are misjoined to his action against Defendant Beddick and the Supervisory Defendants.

Similarly, there is no transactional relationship between his claims against Defendant Beddick and those he brings against Defendants Knight and Villegas. These Defendants were sued for allegedly denying Williams medical and psychological treatment, which led him to attempt suicide. *Id.* at ¶¶ 67-75. Once again, the Court sees no factual connection to the actions of Defendant Beddick. These allegations focus on the perceived deliberate indifference to his physical health stemming from Williams "osteoid arthritis," and these allegations have no transactional relationship to the allegations he levels against Defendant Beddick and the Supervisory Defendants. *Id.* at ¶ 67. These two Defendants, therefore, are also misjoined to the action against Defendant Beddick and the Supervisory Defendants.

In summary, the lack of commonality between Williams' claims against Defendants Hammett, Harmon, Knight, and Villegas on the one hand, and his claims against Defendant Beddick (and the Supervisory Defendants associated with Beddick), on the other hand, indicates misjoinder. The Defendants' motion is well founded.[3] But the "[mis]joinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21.

---

[3] Having determined that Defendants Hammett, Hardon, Knight and Villegas were improperly joined under Rule 20, the Court has no need to determine whether various claims were misjoined under Rule 18.

7

III. Remedy/Statute of Limitations Concerns

The United States Court of Appeals for the Third Circuit has directed that "[t]o remedy misjoinder . . . the court has two remedial options: (1) misjoined parties may be dropped 'on such terms as are just'; or (2) any claims against misjoined parties 'may be severed and proceeded with separately.'" *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) (quoting Fed. R. Civ. P. 21). Because the "decision to remedy misjoinder" has "important and potentially adverse statute-of-limitations consequences," the "court must analyze" those consequences before choosing which remedy to employ. *Id.* at 845–46. The Court of Appeals explained that

> The effect of each option is quite different. When a court drops a defendant under Rule 21, that defendant is dismissed from the case without prejudice. When that occurs, the statute of limitations is not tolled because we treat the initial complaint as if it never existed. But when a court severs a claim against a defendant under Rule 21, the suit simply continues against the severed defendant in another guise. The statute of limitations is held in abeyance, and the severed suit can proceed so long as it initially was filed within the limitations period.

*Id.* at 845 (internal quotation marks, citations, and footnote omitted). Thus, when "dropping and dismissing a party" will result in the claim being "blocked by the statutes of limitations," the just option is to sever the claim, rather than drop the party. *Id.* at 845, 8476. Once severed, the claims proceed separately as "independent actions with separate judgments entered in each." *Id.* (internal quotation marks and citation omitted).

Williams has brought claims against the improperly joined Defendants under 42 U.S.C. § 1983. In § 1983 actions, the statute of limitations is borrowed from the general personal injury statute of limitations of the state where the cause of action arose. *See Hammond v. Krak, et al.*, 2018 WL 5846746 at * 4, (W.D. Pa. Nov. 8, 2018) (citing *Owens v. Okure*, 488 U.S. 235, 249–51 (1989)). In Pennsylvania, the statute of limitations for personal injury actions is two years.

8

*Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003) (citing 42 Pa. Cons. Stat. § 5524(7)). Therefore, Williams had two years from the time his causes of action accrued to file his Complaint against the misjoined Defendants. A cause of action under section 1983 accrues when a plaintiff knew or should have known that his rights were violated. *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991). In other words, when "the first significant event necessary to make the claim suable" occurs. *Lake v. Arnold*, 232 F.3d 360, 366 (3d Cir. 2000). *See also Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994) ("[A] claim accrues in a federal cause of action as soon as a potential claimant either is aware, or should be aware, of the existence of and source of an injury.").

The Court starts with Defendant Hammett. Williams states that Defendant Hammett filed a false misconduct against him on July 14, 2016, allegedly in retaliation for filing a grievance. The alleged harassment continued after that misconduct was dismissed on July 29, 2016, but then refiled on August 4, 2016. ECF No. 4, ¶¶ 43-47. The subject of the August misconduct was the same as the July misconduct. *Id.* at ¶ 48. The statute of limitations did not run then until August 4, 2018. Williams filed this action on July 31, 2018, which was within the limitations period. However, it is likely Williams will suffer inequitable harm if Defendant Hammett is dropped and the claims against him are dismissed because the statute of limitations has long passed and any new action against Hammett may well be time-barred.

The same is true for the claims against Defendant Harmon. Williams asserts that after filing a grievance against this Defendant on September 23, 2016, Harmon retaliated against him on November 10, 2016. ECF No. 4, ¶ 50. Any action based on this alleged retaliation should likely have been filed by November 10, 2016. Thus, were Defendant Harmon dropped from this action, refiling against him would likely be barred by the statute of limitations.

9

In such situations, the Court's "discretion to drop and dismiss claims against misjoined defendants under Rule 21 is abated." *DirecTV*, 467 F.3d at 846. Therefore, the Court is "duty-bound" to sever these claims rather than dismiss Hammett and Harmon. *Id.* at 846 n. 4 (citing *DirecTV, Inc., v. Adrian*, 2004 WL 1146122 at *4 (N.D. Ill. May 18, 2004)).[4] In doing so, the "statute of limitations is held in abeyance, and the severed suit can proceed so long as it initially was filed within the limitations period." *Id.*

The claims against Defendants Hammett and Harmon will be severed and may proceed as separate actions. Williams is hereby given thirty days to refile his claims against these Defendants. In doing so, Williams will be deemed to have satisfied the requirements for *in forma pauperis* status, based on the Court's prior ruling granting his application for that status in the original case. *See, e.g., McKinney v. Prosecutor's Office*, 2015 WL 2574414, at *17 (June 4, 2014).

The Court will, however, drop Defendants Knight and Villegas from this action. Williams' claims against these Defendants most likely accrued on January 12, 2017 when they allegedly denied him medical and psychiatric care. Therefore, Williams has until January 12, 2019 to refile against these Defendants, should he so choose.

An appropriate order will follow.

                                                           The Hon. Richard A. Lanzillo
                                                           United States Magistrate Judge

Dated: Nov 17, 2018, 2018.

---

[4] Williams has also alleged an excessive force claim against Defendant Harmon, stemming from an incident that occurred on December 7, 2016. Although the statute of limitations on that claim will likely not run until December 7, 2018, the Court, exercising discretion under Rule 21, will also sever this claim in the interest of judicial economy. *See, e.g., Cupp v. Harris*, 2018 WL 4599588 at *3 (E.D. Ca. Sept. 21, 2018) (holding that a court may consider whether judicial economy would be facilitated when deciding to sever a claim under Rule 21) (citation omitted).