IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAWN L. WILLIAMS, ) <br> ) <br> Plaintiff ) <br> ) <br> vs. ) <br> ) <br> SUPERINTENDENT MICHAEL ) <br> CLARK, et al., ) <br> Defendants ) <br> ) <br> ) | Case No. 1:17-cv-00204 (Erie) <br><br> United States Magistrate Judge <br> Richard A. Lanzillo <br><br> MEMORANDUM OPINION ON <br> DEFENDANTS' MOTION FOR <br> SUMMARY JUDGMENT <br><br> ECF No. 93 |

I.  Introduction

Plaintiff Shawn L. Williams commenced this §1983 action alleging that certain Pennsylvania Department of Corrections (DOC) officials at the State Correctional Institution at Albion, Pennsylvania (SCI-Albion) violated his rights under the First, Eighth, and Fourteenth Amendments to the U.S. Constitution. The Defendants have moved for summary judgment. For the reasons discussed below, the Court will grant in part and deny in part the Defendants' motion.[1]

II. Relevant Procedural History

Williams filed this lawsuit alleging that the Defendants violated his rights during a series of incidents at SCI-Albion between May 8, 2015 and December 12, 2015. *See* ECF Nos. 4, 20, 26. As Defendants, Williams named twenty-one members of both the DOC and private medical providers at SCI-Albion. *Id.* By Orders dated November 14, 2018, and January 3, 2018, the

---

[1] All parties have consented to the jurisdiction of a United States Magistrate Judge over the matter. ECF Nos. 2, 31, 37. *See also* 28 U.S.C. § 636(c)(1).

1

Court dismissed all claims against ten of these Defendants. The remaining eleven Defendants are employees of the DOC. The remaining Defendants are: Sergeant Beddick, a corrections officer at SCI-Albion, Nancy A. Giroux, former Superintendent and Facilities Manager at SCI-Albion, Michael R. Clark, current SCI-Albion Superintendent and Facilities Manager, Carl Franz, SCI-Albion Deputy Superintendent, Christopher M. Meure, an SCI-Albion corrections officer holding the rank of Major, Trevor Irwin, an SCI-Albion corrections officer holding the rank of Captain and the title of Shift Commander, Earl J. Jones, an SCI-Albion corrections officer holding the rank of Captain, "T." Anderson, an SCI-Albion corrections officer holding the rank of Security Lieutenant, Tammy Bashor, SCI-Albion PREA Coordinator, Ryan Szelewski a Hearing Examiner at SCI-Albion, and Valerie Kusiak, SCI-Albion's PREA Compliance Officer

Williams' current claims arise primarily from Sergeant Beddick's alleged conduct. Against him, Williams asserts a conditions of confinement claim, a sexual harassment claim, a retaliation claim, an excessive force claim, and a state law claim of intentional infliction of emotional distress. Williams asserts a due process claim against Hearing Examiner Szelewski. Against all other Defendants, Williams claims that they failed to protect him from the actions allegedly taken by Beddick.

After discovery, the remaining Defendants moved for summary judgment. The matter has been fully briefed and is ripe for disposition.

III.  Factual Background

At all relevant times, Williams was incarcerated at SCI-Albion. On May 8, 2015, Beddick denied Williams access to a shower. ECF No. 95-1, Ex. 12, p. 9-11. Williams did not file a grievance regarding this incident. ECF No. 113, ¶ 2; ECF No. 96, ¶ 2. Beddick whistled,

2

blew kisses, and winked at Williams on a regular basis. ECF No. 95-1, Ex. 12, p. 17-22. Williams filed a grievance alleging that on June 24, 2015, Beddick blew kisses, winked, and whistled at him. ECF No. 96, ¶ 3. The grievance was investigated by Bashor as a Prison Rape Elimination Act (PREA) complaint. *Id.* Bashor interviewed Williams on November 3, 2015. ECF No. 112, ¶ 31. Bashor's PREA investigation concluded that Williams' allegations were unsubstantiated. ECF No. 96, ¶ 4.

On August 7, 2015, non-party C.O. Wells issued Williams a misconduct for allegedly making threatening statements to him during a random pat-down. ECF No. 96, ¶ 10. Williams was found guilty by Szelewski and sentenced to 30 days of disciplinary custody time. *Id.* at ¶ 10.

On October 31, 2015, between 6:45 and 7:00 a.m., Williams states that he was preparing to conduct his morning prayers, when he heard Beddick making anti-Islamic comments around the Diversionary Treatment Unit. ECF No. 112, ¶ 23-24. Beddick then arrived at Williams' cell and allegedly stated, "right Williams? I'm out to kill Allah's people, so how can I believe in Allah?" *Id.* at ¶ 25. Williams requested a grievance form, but Beddick refused to provide one, allegedly stating, "you should already have one since you love to write them so much." *Id.* at ¶ 26. Later that day, Beddick issued Williams a misconduct for threatening him and using abusive language during their interaction earlier that day. ECF No. 96, ¶ 13. Williams was later found guilty by Szelewski and sentenced to 30 days of disciplinary custody time. *Id.* at ¶ 10.

On December 12, 2015, Beddick was escorting Williams to a medical appointment. Williams attests that Beddick tightened his handcuffs to the point of causing pain and one or more small cuts to his wrist and that Beddick pinched his arm and then twisted the handcuffs in a painful way when removing them. ECF No. 112, ¶ 39-47; ECF No. 96, ¶ 18. Williams wrist bled and he was provided band-aids. *Id.*

IV.     Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) requires a court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the facts and draw all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To defeat a properly supported motion for summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

V.  Analysis and Discussion

   A.  Denial of a Shower on May 8, 2015

Beddick argues that he is entitled to summary judgment on this claim because, even accepting Williams' factual assertions as true, the denial of a single shower does not rise to the level of a constitutional violation. Beddick also argues that because Williams did not file a grievance regrading this incident, he failed to exhaust his administrative remedies. The Court agrees on both points.

First, courts within the Third Circuit have uniformly held that "the denial of showers for a temporary period of time does not rise to the level of a constitutional violation." *Barndt v. Wenerowicz*, 698 Fed. App'x 673, 677 (3d Cir. 2017) (per curiam); *Fortune v. Hamberger*, 379 Fed. App. 116, 122 (3d Cir. 2010) (denial of 15 days of showers does not rise to the level of a constitutional violation); *see also Rodriguez v. Thomas*, 299 F. Supp. 3d 618, 639 (M.D. Pa. 2018) ("The Eighth Amendment does not require that prisoners be afforded frequent or comfortable showers."); *Robinson v. Danberg*, 729 F. Supp. 2d 666, 683 (D. Del. 2010) (finding that denial of a shower on a one-time basis, without more, did not deprive plaintiff of the

5

"minimal civilized measures of life's necessities"); *Moneyham v. United States*, 2019 WL 6817380, at *6 (M.D. Pa. Nov. 19, 2019), report and recommendation adopted, 2019 WL 6826501 (M.D. Pa. Dec. 12, 2019). In the present case, Williams asserts that he was denied a shower on a single occasion, and nothing in the record supports that this denial was coupled with any other conditions that could elevate the incident to a violation of Williams' Eighth Amendment or other constitutional rights. Accordingly, Williams' claim based upon the denial of a shower fails as a matter of law.

Under the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (the "PLRA"), Williams was also required to exhaust any available administrative remedies before bringing a § 1983 action challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, the statute requires "proper exhaustion," meaning that a prisoner's completion of the administrative review process must also satisfy the applicable procedural rules of the prison's grievance system. *Fennell v. Cambria County Prison*, 607 Fed. Appx. 145, 149 (3d Cir. 2015). A procedurally defective administrative grievance, even if pursued to final review, precludes action in federal court. *Id.* Failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be pleaded and proven by defendants. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

The grievance system utilized in Pennsylvania's prison system requires inmates to satisfy a three-step grievance and appeals process. *See* Grievance System Policy DC ADM-804; *Smith v. Sec. of Pa. Dept. of Corrections*, 2018 WL 279363, at *2 (W.D. Pa. Jan. 3, 2018). First, the inmate must "legibly set forth all facts and identify all persons relevant to his claim in a grievance which will then be subject to 'initial review.'" *Smith*, 2018 WL 279363, at *2 (citing

6

*Spruill v. Gillis*, 372 F.3d 218, 233 (3d Cir. 2004)). Second, the initial review must be appealed to the Facility Administrator for a second level of review. *Id.* Finally, "the inmate is required to file an appeal to the Secretary's Office of Inmate Grievances and Appeals ("the Secretary's Office")." *Id.* All three stages of review must be completed before a grievance is deemed administratively exhausted for purposes of the PLRA.

In this case, the record does not include a grievance relating to the shower incident. *See* ECF No. 95-1, Ex. 14. Moreover, Williams' Statement of Disputed Factual Issues specifically states, "Nonetheless, plaintiff did not seek any relief for an Eighth Amendment claim for denial of a shower." ECF No. 113, ¶ 2. In his brief, Williams argues that the grievance coordinator refused to process his grievance. However, this statement lacks evidentiary support,[2] and thus does not serve to excuse his failure to exhaust. *Bronson v. Minnick*, 2006 WL 1670212, at *4 (W.D. Pa. June 15, 2006) ("legal argument is not evidence"). Because it is Williams' burden to show a genuine dispute as to material fact, summary judgment in Beddick's favor on the denial of a shower claim is also appropriate based upon Williams failure to exhaust his administrative remedies.

B.  Sexual Harassment

Defendant Beddick moved for summary judgment on the grounds that Williams' allegations of sexual harassment fail as a matter of law. Based upon careful review of the record and relevant caselaw, the Court agrees.

The Third Circuit's framework for determining whether sexual harassment violates the Constitution requires a plaintiff to satisfy both a subjective and an objective element. *Ricks v.*

---

[2] Williams cites "Exhibits #1, #3 pg. 2" as evidentiary support for his argument that the grievance coordinator refused to process his grievance. The Court has thoroughly searched the record and cannot locate the referenced document.

7

*Shover*, 891 F.3d 468, 473 (3d Cir. 2018). In other words, "the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind." *Id.* at 475.

### 1. Subjective Element

To evaluate the subjective prong, a reviewing court must consider "whether the official had a legitimate penological purpose or if he acted 'maliciously and sadistically for the very purpose of causing harm.'" *Id.* at 475 (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)). In the sexual abuse context, "[t]he nature of the violative conduct itself will often be enough to demonstrate the prison official's culpable state of mind." *Id.* For example, "if ... the officer intentionally brings his or her genitalia into contact with the inmate in order to arouse or gratify the officer's sexual desire or humiliate the inmate, a violation is self-evident because there can be no penological justification for such contact." *Crawford*, 796 F.3d at 252. On the other hand, where the contact is "incidental to legitimate official duties, such as a justifiable pat frisk or strip search," then it is less likely that the search was undertaken "to arouse or gratify the officer or humiliate the inmate." *Ricks*, 891 F.3d at 476 (quoting *Crawford*, 796 F.3d at 257-58). That said, "even if contact between an officer and [an] inmate's genitalia was initially justified, if the officer finds no contraband, continued sexual contact may be actionable." *Crawford*, 796 F.3d at 257.

### 2. Objective Element

In addition to satisfying the subjective element, an inmate must demonstrate that the incident was so objectively "intolerable and cruel" or "capable of causing harm" as to violate the Eighth Amendment. *Rick*, 891 F.3d at 475. As courts have frequently observed, "not ... every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* (quoting *Hudson*

8

*v. McMillian*, 503 U.S. 1, 9 (1992). Rather, "the Eighth Amendment shields inmates from only those actions 'repugnant to the conscience of mankind.'" *Id.* (quoting *Hudson*, 503 U.S. at 10). Thus, "even if sexualized touching lacks a penological purpose, it may still fall below the threshold of constitutional cognizability based on a lack of objective seriousness." *Ricks*, 891 F.3d at 476, 477-78 (declining to impose a "zero tolerance" standard for "all minor sexualized touching in prison," such that all such "inappropriate touching is per se unconstitutional.").

In the present case, Williams' sexual harassment and related claims fail as a matter of law because Williams has not alleged a single instance of inappropriate sexual touching. "[S]exual harassment in the absence of contact or touching does not establish an Eighth Amendment violation." *McCain v. Wetzel*, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)). "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." *Id.* (citing *Manon v. Garrison*, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012)). Rather, "physical sexual assault or threats of physical assault is required for the objective element to be met." *Id.* While conduct and comments that Williams attributes to Beddick is offensive and unprofessional, it does not rise to the level of a constitutional violation. Accordingly, Beddick is also entitled to summary judgment on this claim.[3]

---

[3] Williams' papers opposing summary judgment include several references to his PREA complaint against Beddick and the investigation that followed. While it is unclear whether Williams is asserting a claim pursuant to the PREA, case law is relatively clear that the PREA does not authorize a private right of action. *Clark v. Doe-Walker*, 2019 WL 2491275, at *2 (E.D. Pa. June 14, 2019). "While the PREA was intended in part to increase the accountability of prison officials' and to protect the Eighth Amendment rights of Federal, State, and local prisoners, nothing in the language of the statute establishes a private right of action." *Id.* (quoting *Walsh v. N.J. Dep't of Corr.*, 2017 WL 3835666, at *4 (D.N.J. Aug. 31, 2017) (internal quotations omitted); see also *Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015) (per curiam) ("[O]ther courts addressing this issue have found that the PREA does not establish a private cause of action for allegations of prison rape."); *Peterson v. Burris*, 2016 WL 67528, at *2 (E.D. Mich. Jan. 6, 2016) ("Numerous Courts that have addressed this issue have determined that the PREA provides no private right of action to individual prisoners."). Accordingly, a "[p]laintiff cannot[ ] ... bring a private action to enforce

9

C.  Retaliation

Beddick argues that he is entitled to summary judgment on Williams' retaliation claim because the record is insufficient to support a finding that the alleged retaliatory acts were motivated by Williams' protected conduct. The Court disagrees. Genuine issues of fact remain as to whether Beddick issued the October 31, 2015 misconduct in retaliation for Williams' request for a grievance form.

In order to establish illegal retaliation for engaging in protected conduct, a plaintiff must allege that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)). An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). A plaintiff must also allege a causal link between protected conduct and the adverse action taken against him. A causal link is established when the protected conduct "was a substantial or motivating factor in the decision to discipline [a plaintiff]." *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002).

In the present case, Williams has not produced evidence sufficient to support a causal link between the filing of his PREA complaint and the adverse action taken against him. No temporal proximity exists between the PREA complaint and the allegedly false misconduct

---

obligations set forth in the PREA, whether through the statute itself or through [an] attempt to enforce the DOC PREA policy via section 1983." *Bowens v. Employees of the Dep't of Corr.*, 2016 WL 3269580, at *3 (E.D. Pa. June 15, 2016), aff'd *Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017) (per curiam).

10

submitted against him. Indeed, over four months passed between Williams' June 24 grievance and the allegedly false October 31 misconduct. Temporal proximity of more than a few days is insufficient to establish causation. *Booze v. Wetzel*, 2015 WL 5173937 at *13-16. (M.D. Pa. 2015) (collecting cases). Williams points to his earlier August 7 misconduct as a more proximate retaliatory act; however, that misconduct was not issued by Beddick, and it did not relate to him in any way.

However, that is not the end of the inquiry. Indeed, the record includes evidence that Beddick retaliated against Williams because he requested a grievance form from Beddick on the morning of October 31, 2015. The request for a grievance form constitutes protected conduct. *See Palmore v. Hornberger*, 2019 WL 5073672 at *4 (W.D. Pa. July 8, 2019). Further, there is ample record evidence to support a causal link between Williams' request for a grievance form and the allegedly false misconduct. Specifically, it is undisputed that the misconduct was issued the same day as the protected conduct. Moreover, a jury could find that Beddick referenced other grievances filed by Williams in response to Williams' request for a grievance form. Accordingly, viewing the record evidence in the light most favorable to Williams, the Court finds that Williams has established a genuine issue of fact as to whether the October 31, 2015 misconduct was issued in retaliation for Williams' request for a grievance form.

D.  Excessive Force

Beddick argues Williams' excessive force claim fails because the force described by Williams—tightening or pulling down on his handcuffs to the point of causing pain and superficial cuts, pinching his arm, and removing the handcuffs in a painful way—was a *de minimis* use of force under the Eighth Amendment. Based on the record, the Court agrees.

11

In an excessive force case, the "core judicial inquiry" is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). There are several factors that a court examines in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312 (1986)).

At the outset, the Court notes that Beddick's use of handcuffs to transport Williams was penologically sound and appropriate. While this demonstrates that the initial use of force was a good faith security measure, *see Mensinger*, 293 F.3d at 648, it does not end the inquiry. A penologically sound restraint, such as handcuffs, can be used in a manner that results in an Eighth Amendment violation. *See Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (complaint alleging that defendants tightened handcuffs, leg irons and waist chain to the point they cut into prisoner's flesh, reduced circulation, caused swelling and resulted in permanent scarring stated an Eighth Amendment claim). Further, where excessive force is demonstrated, an inmate need not prove that the harm he suffered was serious to make out a constitutional claim because the absence of injury does not necessarily foreclose liability. *Hudson*, 503 U.S. at 7. At the same time, the Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes *de minimis* uses of physical force, provided they are not of a sort "'repugnant to the conscience of mankind.'" *Whitley*, 475 U.S., at 327 (quoting *Estelle*, supra, 429 U.S., at 106).

12

"There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically." *Reyes v. Chinnici*, 54 Fed. App'x 44, 48 (3d Cir. 2002). "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

Based upon the record in this case, Beddick's actions cannot be said to have crossed the constitutional line. Beddick's use of handcuffs was a legitimate security measure. According to Williams' declaration, he sustained only a laceration on his wrist, which was treated with only band aids and ointment. *See* ECF No 112, pp. 7-8. Further, it is undisputed that Williams never made a subsequent sick call or request for treatment during a medical appointment regarding the laceration. *See* ECF 96, ¶ 21; ECF 113, ¶ 21. Finally, Williams has alleged no lasting injury, scaring, infection, or pain. *See* ECF No 112, pp. 7-8. Thus, the Court finds that the actions and type of injury described by Williams reflect a *de minimis* use of force that is insufficient to support an Eighth Amendment violation. *See Fears v. Beard*, 2012 WL 5905061, at *5 (W.D. Pa. Nov. 2, 2012), report and recommendation adopted, 2012 WL 5905060 (W.D. Pa. Nov. 26, 2012) (placing handcuffs placed on an inmate too tight, resulting in two superficial scratches on right wrist with no bleeding or observable swelling and requiring only band aids and antibiotic ointment constituted *de minimis* use of force and was not a constitutional violation); *Jones v. Horn*, 1998 WL 297636, at *4–*5 (E.D. Pa. June 4, 1998) (restraining inmate in handcuffs was a *de minimis*, not excessive, use of force); *Gutridge v. Chesney*, 1998 WL 248913, at *3 (E.D. Pa. May 8, 1998) (correctional officer used *de minimis* force in handcuffing inmate and pushing him against a wall); *Robinson v. Link*, 1994 WL 463400, at *1 (E.D. Pa. Aug. 25, 1994) (holding that plaintiff being "placed in handcuffs, 'pulled' along the corridor by his handcuffs, and hit in the

back," with no injury, was *de minimis* and did not rise to the level of a constitutional violation); *Collins v. Bopson*, 816 F. Supp. 335, 340 (E.D. Pa. 1993) (tight application of handcuffs was *de minimis*).

The only other force that Beddick used was the pinching of Williams' arm. This use of force was also legally *de minimis*, particularly given the very brief duration of any resulting discomfort experienced by Williams. There is also nothing in the record to indicate that Williams suffered any injury as a result of the pinch.

Accordingly, the Court will enter summary judgment in Beddick's favor on Williams' excessive force claim.

E. Intentional Infliction of Emotional Distress

Beddick argues that he is entitled to summary judgment on Williams' state law claim of intentional infliction of emotional distress because he is protected by sovereign immunity. The Court agrees.

The Eleventh Amendment to the United States Constitution proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). The DOC is an agency and arm of the Commonwealth of Pennsylvania and, as such, it and its employees are entitled to Eleventh Amendment immunity unless an exception to such immunity applies. *See Steele v. Pennsylvania*, 2009 WL 614800, at *8 (W.D. Pa March 6, 2009); *O'Donnell v. Department of Corrections*, 790 F. Supp 2d 289, 305 (M.D. Pa. 2011).

Eleventh Amendment sovereign immunity is subject to three basic exceptions:

> (1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the

14

> Fourteenth Amendment; (2) a state may waive its sovereign immunity by consenting to suit; or (3) under *Ex parte Young*, 209 U.S. 123 (1908), a state official may be sued in his or her official capacity for prospective injunctive relief.

*See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002); *Hindes v. FDIC*, 137 F.3d 148, 165-66 (3d Cir. 1998). With respect to the first exception, it is well-settled that Congress did not intend to abrogate the states' sovereign immunity by enacting § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Furthermore, Pennsylvania has unequivocally withheld its consent to such suits. Section 8521 of Title 42 of the Pennsylvania Consolidated Statutes clearly states, "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment of the Constitution of the United States." 42 Pa. Cons.Stat.Ann.§ 8521(6); *see also Lombardo v. Pennsylvania*, 540 F.3d 190, 196 n.3 (3d Cir. 2008); Pa.Const.Art. I, .§ 11; 1 Pa.Cons.Stat.Ann. §2310; *Lavia v. Department of Corrections*, 224 F.3d 190, 195 (3d Cir. 2000); *Wongus v. Corr. Emergency Response Team*, 389 F. Supp. 3d 294, 302 (E.D. Pa. 2019).

Because Beddick was acting in his official capacity at the time his challenged actions and no exception to Eleventh Amendment immunity applies, he is immune from Williams' state law intentional infliction of emotional distress claim. Accordingly, the Court will enter summary judgment in favor of Beddick on this claim.

F.  Due Process

Defendant Szelewski argues that he is entitled to summary judgment on Williams' due process claim arising from Szelewski's decision finding Williams guilty of the October 31 misconduct. The Court agrees.

The Due Process Clause offers procedural and substantive protections against deprivations of "life, liberty, or property." U.S. Const. amend. XIV, § 1. The threshold issue of due process analysis is whether a plaintiff has been deprived of one of these protected interests. Although Williams has not specifically identified which liberty interest Szelewski allegedly violated, the allegations of the Complaint indicate he is basing his claim on his interest in avoiding the disciplinary custody that resulted from the misconduct hearing. Due process requirements apply, however, only when the government's actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 471, 484 (1995). "[T]he baseline for determining what is 'atypical and significant'—the 'ordinary incidents of prison life'—is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin*, 515 U.S. at 486).

The United States Court of Appeals for the Third Circuit has held than an allegedly fraudulent misconduct report and related disciplinary sanctions lasting longer than thirty days fell short of a due process violation. *Smith v. Mensinger*, 293 F.3d 641, 653–54 (3d Cir. 2002). Of special significance to this case, however, the Third Circuit has also stated that "prison disciplinary proceedings may ... constitute a denial of due process in the context of a civil rights action under § 1983 when they are instituted for the sole purpose of retaliating against an inmate for his/her exercise of a constitutional right." *Bond v. Horne*, 553 F. App'x at 224 (emphasis added) (quoting *Smith*, 293 F.3d at 653).

Here, the crux of Williams' due process claim is that Szelewski, the hearing examiner, colluded with Beddick to assist in his retaliation against Williams for filing the PREA grievance.

16

Following the hearing, Szelewski found Williams guilty of the October 31 misconduct and sentenced him to thirty days of disciplinary custody time. However, the record includes no evidence to support Williams' conclusory allegations that Szelewski colluded with Beddick. Accordingly, even though there may have been a retaliatory motive behind the underlying misconduct charge, there is no evidence on which a jury could base a finding that Defendant Szelewski colluded with Beddick to aid in retaliation.

Moreover, it is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. *Brown v. Parker*, 2010 WL 2080004, *2 (M.D.Pa., 2010) (citing *Moody v. Daggett*, 429 U.S. 78, 88 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)). Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." *Id*.

In this case, Williams was only sanctioned to thirty days disciplinary custody as a result of the misconduct. He does not point to any record facts demonstrating that the length of his confinement, or the conditions of his confinement, amounted to an "atypical and significant hardship" under *Sandin* sufficient to deprive him of a protected liberty interest. "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 642, 653 (3d Cir. 2002) (quoting *Sandin*). Accordingly, summary judgment will be entered in favor of Szelewski.

17

G. Failure to Protect

Defendants Giroux, Clark, Franz, Meure, Irwin, Jones, Anderson, Bashor, and Kusiak move for summary judgment on Williams' claim that they are liable as supervisors and/or grievance officials based on their failure to protect Williams from the allegedly injurious conduct of Beddick. They argue that because Beddick's conduct did not amount to a constitutional violation, their failure to protect Williams therefrom cannot rise to the level of a constitutional violation. The Court agrees.

As discussed above, except as to Beddick's issuance of the allegedly false and retaliatory October 31, 2015 misconduct charge, Williams has not established a viable constitutional claim against Beddick. The record includes no evidence to support a finding that any of the supervisory or grievance Defendants were aware of or involved with the potentially retaliatory misconduct. For these reasons, no claim can lie against the remaining supervisory and grievance Defendants for their failure to protect Williams from Beddick's alleged conduct. Courts in this Circuit have routinely held that a failure to protect claim under the Eighth Amendment requires an underlying constitutional violation. *See, e.g., Nico Elec. Contractor, Inc. v. City of Camden*, 709 Fed. App. 148, 151 n. 8 (3d Cir. 2017) (upholding the district court's dismissal of all claims against supervisory officials because there was no underlying violation committed by prison guards); *Wilcox v. Martinez*, 2019 WL 851373, at *5 (D.N.J. Feb. 20, 2019) (dismissing claims against prison officials because the plaintiff failed to adequately plead any underlying violation of his constitutional rights by the prison guard); *Buoniconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 441 (E.D. Pa. 2015) (dismissing claim that defendant prison officials failed to properly investigate an assault against the plaintiff because there was no underlying violation surrounding assault). *See also Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 238 n. 15 (3d Cir. 2013)

(quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 505 (3d Cir. 2003)) ("The initial question in a section 1983 action is whether the plaintiff has alleged a deprivation of a constitutional right at all."). Accordingly, summary judgment will be entered in favor of Defendants Giroux, Clark, Franz, Meure, Irwin, Jones, Anderson, Bashor, and Kusiak.

VI.     Conclusion

For the reasons set forth above, Defendants' motion for summary judgment (ECF No. 93) is hereby GRANTED IN PART and DENIED IN PART. The motion is denied as to Williams' retaliation claim against Defendant Beddick for the allegedly retaliatory October 31 misconduct charge. It is granted as to all other claims against all other Defendants.

```
                                          _____
                                          RICHARD A. LANZILLO
                                          UNITED STATES MAGISTRATE JUDGE
```

Entered this 7th day of January, 2020.